UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **HEARTLAND FOOD PRODUCTS, LLC** )<br>)<br>  **Plaintiff,** )<br>)<br>v. )<br>)<br>**E. ALLEN FLEENER** )<br>)<br>  **Defendant** )<br>)<br>**E. ALLEN FLEENER** )<br>)<br>  **Counterclaim Plaintiff,** )<br>)<br>v. )<br>)<br>**HEARTLAND FOOD PRODUCTS, LLC, and** )<br>**ROCH CAPITAL, INC.** )<br>)<br>  **Counterclaim Defendants.** ) | Case No. 18-CV-02250 |

**HEARTLAND FOOD PRODUCTS, LLC AND ROCH CAPITAL, INC.'S
<u>OPPOSITION TO MOTION TO COMPEL</u>**

Heartland Food Products, LLC and Roch Capital, Inc. fully complied with their obligations under the federal rules, and Mr. Fleener's Motion to Compel should therefore be denied. Mr. Fleener's document requests in this case called for the production of over 21,000 emails, plus attachments. Heartland produced them as TIFF images with accompanying load files – the industry best practice for large ESI productions because (i) it preserves metadata, as required by the federal rules; (ii) it maintains the integrity of "families" – *i.e.*, emails are associated with their attachments; and (iii) it permits the production to be uploaded to a document review platform, which is the only practical way to review large data sets.

Mr. Fleener argues, however, that Heartland should have produced the documents in pdf, but such a production would have violated the federal rules and, in any event, makes no sense. Converting documents to pdf does not preserve all of a document's metadata, and would be practically impossible to review. Pdfs also use significantly more storage space than TIFF images – sometimes double – and so housing documents in pdf would also drastically increase the ESI carrying costs for both parties. And while the parties had anticipated that they would produce documents in pdf, this was based on the assumption that only "targeted" email requests would be sent. (*See* Motion, ¶1.) It was Mr. Fleener who abandoned that commitment by issuing such broad document requests and undercut any rationale for a pdf production. For these reasons, and as further stated below, Mr. Fleener's motion should be denied.

## I.     Background

On January 31, 2019, Mr. Fleener issued his Requests for Production to Heartland Food Products and Roch Capital. (*See* Requests, attached as Exhibit A.) There were 50 document requests in total, including broad requests for communications and "all documents relating to Mr. Fleener's work performance," without time restriction. (*See, e.g.,* Requests to Heartland, ¶¶ 1-9.) The requests also incorporate the definition of "document" as referenced in Federal Rule 34. (*Id.* at p. 6.)

On April 2, Heartland made its production. It produced the documents as TIFF images with load files. Because of the size of the data set, the documents had to be delivered using compression/zip software. Heartland used RAR, a commonly used compression software, to deliver the documents.

After receipt of the production, Chris Dove, counsel for Mr. Fleener, contacted Tim Carwinski, counsel for Heartland, because Mr. Dove was having trouble opening the documents.

Mr. Dove did not have the RAR software, so Mr. Carwinski located a website where he could download a free copy of the software and unzip the documents, and directed Mr. Dove to the site. Mr. Dove was still not able to work the software, and so requested instead that the documents be sent in pdf format. Mr. Carwinski explained to Mr. Dove that the compression software used is wholly unrelated to the file type of the underlying document, and no matter the form of the underlying document file type the documents would still have to be compressed in order to be delivered; 21,000 emails and attachments cannot be efficiently delivered one at a time. Mr. Dove also asked that the documents be produced natively but, again, did not address the compression issue that was the true obstacle to his accessing the documents.

## II.   The Production Complied With the Federal Rules and Provided the Documents Sought in the Requests

Heartland and Roch Capital's document production was precisely the form required of any proper ESI production. It is well established that the federal rules require a producing party to deliver ESI with its metadata intact. *Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 652 (D. Kan. 2005) (producing documents as maintained in regular course of business means "the producing party should produce the electronic documents with their metadata intact.") Here, Heartland and Roch Capital produced the documents consistent with this requirement. By contrast, a production in pdf would not have maintained all of the relevant metadata. Mr. Fleener is not permitted to require the production in more than one format. Fed. R. Civ. P. 34(b)(2)(E)(iii).

Additionally, Mr. Fleener's request for emails in pdf also does not make any sense. A file folder containing 21,000 individual pdfs would be of no practical value – one could not search across it, for example, or organize the data in a way that is useful for litigation. Instead, Mr.

Fleener's real objection appears to be the compression file – but these are totally separate issues. 21,000 files would have to be compressed no matter what format they are in.[1]

There are also burdens associated with converting the documents to pdf – in addition to tech time, the process would likely use a day of computer time, and any computer error (which is likely) would require the whole process to have to be started again. Pdfs also take up more space, and so are more expensive to maintain. (Most document review software, including the software used by Heartland and Roch Capital in this case, charge monthly usage fees by the gigabyte.)

Mr. Fleener's contention that the documents should be produced in pdf because of the parties' Rule 26(f) report is unpersuasive. This agreement was premised on a commitment to only issue "targeted" email requests. (*See* Motion, ¶1.) There was never a meeting of the minds as to whether a large ESI production would be done in pdf, and Mr. Fleener has never explained (either in his motion or in meet and confer) why a pdf production would ever be desirable in such a case. His motion to compel a second production in that format should be denied.

### III.   The Documents Were Produced As Kept in the Usual Course of Business

Mr. Fleener also moves to compel Heartland and Roch Capital to label the emails to correspond to his document requests. As a threshold matter, though, Mr. Fleener has not raised this issue except through his motion. His failure to meet and confer on this objection prior to filing is cause alone to deny the motion.

Had Mr. Fleener met and conferred on the point, he would know that the emails produced in this case did not have to be labeled to correspond to his requests because they were produced as kept in the usual course of business. *See* Fed. R. Civ. P. 34(b)(2)(E)(i) ("A party must produce

---

[1] Heartland and Roch Capital would be willing to deliver the documents to Mr. Fleener on a hard drive, provided he agrees to cover the cost. These documents would have to be encrypted, however, and it is unclear whether Mr. Fleener would know how to employ decryption software given the difficulties he has had with compression.

documents as they are kept in the usual course of business <u>or</u> must organize and label them to correspond to the categories in the request") (emphasis added). Here, the documents were gathered by a simple search of Mr. Fleener's name and the names of the other individuals from whom he had sought correspondence in his requests. They were then produced in the order of the hits, without any reorganization or manipulation, with each email's attachment(s) adjoining the email to which it corresponded. Heartland and Roch Capital did not review the documents, and so did not change the order. Because they were produced as kept, they did not have to be labeled under Rule 34.

Moreover, even if the documents had not been produced in this manner, Heartland and Roch Capital still would have no obligation to review and label the documents. The parties expressly agreed that no ESI reviews would be required as part of their Rule 26(f) conference. (*See* Motion, ¶ 1 ("…no open-ended ESI reviews will be required.").) Mr. Fleener cannot end-run that agreement by reference to the labeling requirement. Further, courts have held that, even in absence of such an agreement, it would be "unfair and unduly onerous" to require parties to do as Mr. Fleener now asks. *See, e.g., Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 338 (N.D.N.Y. 2008).

For the foregoing reasons, Mr. Fleener's Motion to Compel should be denied.

                              Respectfully submitted,

                               */s/ Adam T. Suroff*
                              Adam T. Suroff
                              POLSINELLI PC
                              900 W. 48th Place, Suite 900
                              Kansas City, MO 64112
                              T: 816.360.4138
                              F: 816.572.5138
                              asuroff@polsinelli.com

James A. Rolfes (*Pro Hac Vice*)
Timothy R. Carwinski (*Pro Hac Vice*)
Reed Smith LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois  60606
T: 312-207-1000
F: 312-207-6400

**ATTORNEYS FOR HEARTLAND FOOD PRODUCTS, LLC AND ROCH CAPITAL, INC.**

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on May 21, 2019, a true and accurate copy of the foregoing was filed electronically with the Court.  Notice of this filing will be sent by operation of the Court's electronic filing system to all ECF registered parties.  Parties may access this filing through the Court's CM/ECF system.

/s/ *Adam T. Suroff*

- 6 -

68668662.1